**UNITED STATES of America,**

v.

**Mario VILLANUEVA MADRID, Luis Ernesto Villanueva Tenorio and Consuelo Marquez, Defendants.**

**No. S5 02Cr.0416(NRB).**

United States District Court, S.D. New York.

Dec. 18, 2003.

188

Robert Morvillo, Catherine Foti, Michael Berlin, Morvillo, Abramowitz, Grand, Iason & Silverberg, New York City, for Defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Defendant Consuelo Marquez is charged in a seventeen-count indictment. The first count of her indictment charges her with conspiracy to launder the proceeds of illegal activity, and the remaining sixteen counts charge her with conspiring to commit bank and wire fraud.

Defendant has moved for severance of Count One from Counts Two through Seventeen of her indictment pursuant to Federal Rules of Civil Procedure 8 and 14; dismissal of the conspiracy to commit bank fraud charge; dismissal in part of the deprivation of honest services charge; an order for the government to re-present the allegations of Counts Two through Seventeen to the Grand Jury in the event we dismissed any of the charges; and various discovery orders.

On October 24, 2003, we heard oral argument on defendant's motions and denied her motion to dismiss the government's bank fraud charge. For the reasons set forth below, we now grant her motion for severance, deny her motion for dismissal,[1]

1. Because we deny defendant's motion to dismiss the wire fraud charges, her motion for

and grant in part and deny in part her discovery motion.

## BACKGROUND

During the relevant time period, defendant was an investment broker first at Serfin Securities and then at Lehman Brothers. As set forth in the fifth superseding indictment ("the indictment"), defendant is charged, in Count One, with conspiring to launder the proceeds of illegal activities in violation of 18 U.S.C. § 1956(h), § 1956(a)(1)(A)(i) and § 1956(a)(1)(B)(i) and, in Counts Two through Seventeen, with conspiring to commit bank fraud in violation of 18 U.S.C. § 1344 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.

Count One alleges that defendant's client and co-conspirator, Mario Ernesto Villanueva Madrid, while serving as Governor of the Mexican state of Quintana Roo, formed an alliance with Alcides Ramon Magaña's drug cartel, one of the most powerful cartels in Mexico. Ind. ¶¶ 2–3. Specifically, Magaña's cartel allegedly paid Madrid millions of dollars to provide "state and federal police and other resources to offload, transport, store, and protect" hundreds of tons in cocaine shipments. Id. at ¶¶ 1–3. Based on these alleged activities, Madrid has been separately indicted for a narcotics trafficking conspiracy that involved, inter alia, illegal possession of firearms. Opp. at 79.

Count One further alleges that defendant knowingly helped Madrid and his son, Luis Ernesto Villanueva Tenorio, launder Madrid's narcotics proceeds by establishing several offshore corporations of which they were the concealed beneficial owners, by setting up accounts at Serfin and Lehman Brothers in the name of these corporations, and by moving narcotics proceeds

through these accounts at the direction of Madrid and/or Tenorio. Ind. ¶ 10.

In early 1999, after the Mexican Attorney General's office had been investigating Madrid for approximately a year and shortly before Madrid's term was to expire, Madrid and his son disappeared. Shortly thereafter, the Mexican government announced that it had issued a warrant for his arrest. Ind. ¶ 6. In the weeks following Madrid's disappearance, the indictment alleges, defendant attempted to liquidate Madrid's narcotics proceeds through accounts of apparently unrelated third parties. Ind. ¶¶ 10. Ultimately, defendant allegedly transferred millions of dollars to accounts at other banks and brokerage firms, both domestic and in the Bahamas and Panama. Id.

Counts Two through Seventeen describe a separate and self-contained conspiracy to commit bank and wire fraud. These counts allege that defendant conspired with Sylvia Aubuchon, then Assistant Vice President and Client Services Officer for Bank One Investment and Management Trust Group ("Bank One IMT"), to borrow hundreds of thousands of dollars in the names of Bank One and Aubuchon's individual clients, without the clients' knowledge but using their assets as collateral. According to the indictment, defendant and Aubuchon then invested the loan proceeds in securities and repaid the loans while retaining the profits, which exceeded $129,000, for their own personal benefit. Ind. ¶¶ 21–29. The indictment does not allege that this conspiracy resulted in any actual losses to any of the victims.

## DISCUSSION

### I. Motion for Severance

Defendant asserts two alternative grounds for severance of Count One from

an order requiring the government to seek a superseding indictment is moot.

Counts Two through Seventeen: first, that the counts were improperly joined under Fed.R.Crim.P. 8(a) ("Rule 8(a)"), and second that discretionary severance under Fed.R.Crim.P. 14 ("Rule 14") is warranted because of the undue prejudice that would flow from a trial that combined money laundering charges with bank and wire fraud charges. For the reasons set forth below, we deny defendant's motion for severance under Rule 8(a) and grant her motion for severance under Rule 14.

■ Defendant first argues that the counts were improperly joined under Rule 8. Rule 8(a) provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

The government justifies joinder on the "same or similar character" ground.

While we are mindful that the character ground has been interpreted narrowly because it represents only a small gain in trial efficiency, *see United States v. Halper*, 590 F.2d 422, 430–31 (2d Cir.1978), we nonetheless find that the facts of this case support joinder. In particular, the counts in this case are sufficiently similar to be joined because both alleged offenses involved conspiracies to exploit defendant's independent, insulated, and responsible position at Lehman brothers to transfer funds illicitly, and because defendant allegedly used some of the same accounts to carry out both offenses. *See United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990) (finding that state senator's alleged false statements on two loan applications and perjury on an unrelated matter were sufficiently similar to warrant joinder because "[a]ll three relate to Ruiz's extra-senatorial activities through [the non-profit he headed]" and "involved substantial alleged dishonesty"); *United States v. Werner*, 620 F.2d 922, 927 (2d Cir.1980) (upholding joinder of robbery and theft charges related to two separate incidents, even though one offense was violent and the other was not, because "both offenses arose out of Werner's scheme to use his position as an insider with Lufthansa to obtain money or property carried by it to [the same airport]").

■ While we agree with the government that joinder was proper, we nonetheless exercise our discretion to sever the counts under Rule 14 to avoid undue prejudice. *See Zafiro v. United States*, 506 U.S. 534, 541, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts."); *United States v. Halper*, 590 F.2d 422 (2d Cir.1978) (finding that the risk of prejudice is heightened in cases where alleged offenses have been joined under the character prong of Rule 8(a)). In pertinent part, Rule 14 states that "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment ... or by such joinder for trial together, the court may order an election or separate trials of counts." Among other grounds, district courts granting severance under Rule 14 have noted the importance of the violent nature of the count(s) sought to be severed, *see United States v. Gallo*, 668 F.Supp. 736, 750–51 (E.D.N.Y.1987); *United States v. Claytor*, 52 F.R.D. 360, 363 (S.D.N.Y.1971), and the complexity of the charges, *see Gallo*, 668 F.Supp. at 749–50.

We are aware that the danger that a jury will cumulate evidence is inherent in *any* joinder of similar acts under 8(a), and therefore presumably is countenanced by

that provision. However, the danger of undue prejudice is particularly acute in this case. Specifically, as defendant argued at oral argument, *see* Trans. at 35–36, the laundering trial will involve evidence connecting defendant to a corrupt politician and a powerful, violent narcotics cartel. *See* Opp. at 79. This evidence may well arouse jury animus that could, in a joint trial, spill over into the jury's consideration of the fraud charges, which involve an alleged scheme which, fortunately, turned out not to have injured anyone.

The government's argument, *see* Opp. at 37–38,[2] that the prejudice resulting from joinder would be insignificant in light of the mutual admissibility of the evidence under Fed.R.Evid. 404(b) to show knowledge, intent, opportunity, and modus operandi does not resolve the issue. Even assuming the probative value of each offense with respect to the other, we still have to decide at the time of trial whether, on the balancing test imposed by Fed. R.Evid. 403, the prejudicial effect of that evidence substantially outweighs its probative value.

We are seriously concerned, for the reasons given above, about the prejudice that might result if certain narcotics laundering evidence was introduced into the bank and wire fraud trial. However, we do not at present see similar concerns arising from admission under Fed.R.Evid. 404(b) of evidence of bank or wire fraud that is relevant to the money laundering charge under Fed.R.Evid. 401. At oral argument, the government stated its intention to first prosecute the money laundering offense if severance was ordered. This sequence, which was confirmed in a telephone conference thereafter, ameliorates our concerns about prejudicial spillover.

## II. Motion to dismiss wire fraud counts

■ Defendant also moves to dismiss in part the wire fraud charges based on 18 U.S.C. § 1346, which requires the government to prove that defendant and her alleged co-conspirator deprived "another of the intangible right of honest services."[3] Defendant points out that, according to the case law, this statute only applies to offenses where the victim(s) would have a cause of action in tort. She argues that, therefore, the charges cannot lie with respect to Aubuchon's clients because their relationship with Aubuchon is purely contractual in nature.

■ The government responds that, as with defendant's motion to dismiss the bank fraud charge, this motion is premature as it relies on evidentiary assertions that must be tried. We agree with the government. The Second Circuit's opinion in *United States v. Alfonso*, 143 F.3d 772 (2d Cir.1998), sets out the relevant standard to test the legal sufficiency of the

---

**2.** The government cites, *inter alia, United States v. Moore*, 97 F.3d 561, 564 (D.C.Cir. 1996) (finding that, in light of the mutual admissibility of the offenses charged, Rule 14 severance was unnecessary).

**3.** In the fourth superseding indictment, which applied during the briefing of this motion, the government alleged that defendant conspired to deprive Aubuchon's *clients* of her honest services but failed to allege the same offense against Aubuchon's *employer*, Bank One. Ind. S(4) at ¶ 21. Defendant's brief proceeded under the terms of the fourth superseder. However, a fifth superseding indictment, which added the allegation that Bank One was a victim of the alleged wire fraud, see Ind. S(5) at ¶ 21, was voted on shortly after defendant filed her reply, but was not made known to the court or defendant until oral argument. Defendant has informed the court in her letter of November 3, 2003, that she does not, at this time, move to dismiss this new allegation, but that she maintains her motion to dismiss the allegation that defendant conspired to deprive Aubuchon's *clients* of Aubuchon's honest services.

indictment. In that case, the Second Circuit reversed the lower court's dismissal of an indictment count under the Hobbs Act, rejecting the lower court's finding that the government's failure to show a nexus with interstate commerce warranted dismissal. The court held that, so long as an indictment count is facially valid, a trial court may not look beyond it to examine the sufficiency of the evidence supporting that count. *Id.* at 776. To be facially valid, under *Alfonso,* all the indictment need include is a rehearsal of the statutory language under which a defendant is being charged and a description of the alleged crime that is specific enough to allow defendant to prepare his case and to avoid double jeopardy in the future. *Id.* Applying this standard, we find that, because ¶ 21 of the indictment alleges that defendant and her co-conspirator conspired "to defraud Aubuchon's clients of money and Aubuchon's honest services as a trust officer and investment advisor," it is sufficient on its face.

█ Beyond the facial sufficiency of the indictment, defendant argues that the wire fraud statute cannot be applied to her, with respect to Aubuchon's clients, because the "honest services" provision only applies in tort scenarios and Aubuchon's relationship with her clients was contractual. She relies primarily on *United States v. Handakas,* 286 F.3d 92 (2d Cir.2002), which held that § 1346 cannot be applied to "garden-variety" breaches of contractual duty such as, in that case, Handakas' failure to pay his workers the state-mandated minimum wage provided for in his contract for construction work on New York City schools. But *Handakas* also acknowledged, based on the existing case law, that the statute *does* apply to "a

scheme to harm another by the breach of a duty enforceable by an action in tort," and cited as one example of such a duty that of a financial consultant to his client. *Id.* at 106. *Handakas,* therefore, should be read not as an effort to exclude all conduct that could give rise to a breach of contract claim, but rather as an effort to prevent a state of the law in which the government could recast any and all contractual breaches as federal crimes.

The government's allegations fall within § 1346 even as narrowed by *Handakas.* Specifically, the government alleges that Aubuchon breached a fiduciary duty owed to her clients, in whose "best interests" Aubuchon "purported to act" and to whom she purported to "fully [ ] disclose all facts and circumstances material to" their relationship. Ind. ¶ 14. Moreover, the alleged conspiracy involved assets taken from her client's accounts, without their knowledge, and pledged as collateral for a loan, and had the funds been lost, these clients would have had a tort claim against Aubuchon for fraud. In short, we note that the government does not merely charge that Aubuchon failed to perform her contractual duties. Rather, the government charges that Aubuchon exploited her professional relationships, whether or not they were contractual,[4] for illicit personal gain.

For the reasons we have just set forth, we deny defendant's motion to dismiss the wire fraud charges based on deprivation of honest services.

## III. Discovery issues

Defendant also moves for the following discovery orders: to undertake a good faith effort to obtain all relevant docu-

---

**4.** We note that the government disputes defendant's characterization of Ms. Aubuchon's relationships with her clients as contractual.

ments from Mexico; to produce all *Brady*,[5] *Giglio*,[6] and Jencks Act[7] materials 60 days before trial; to produce 404(b) evidence at least 60 days before trial; to produce a list of trial documents at least 60 days before trial; and to produce the witness list at least 30 days before trial.

After careful consideration of the arguments and interests on both sides, we have decided on the following schedule. At the outset, we note that it is unnecessary for us to make any directions with respect to the government's disclosure of *Brady* material. The government has represented that "consistent with this Office's usual practice, the government will advise the defense promptly of any such information, if and when [it] comes to light." Opp. at 70.

With regard to *Giglio* material, the government shall produce all such evidence in their possession one week before trial.[8] *See United States v. Coppa (In re United States)*, 267 F.3d 132, 146 (2d Cir.2001) (holding that the government need only produce *Giglio* material "in time for its effective use," but noting that courts may have discretion to "order pretrial disclosures as a matter of sound case management"); *United States v. Mercado*, No. 02–675, 2003 WL 21756084, *5 (S.D.N.Y. Jul 30, 2003) (exercising discretion to order pretrial discovery of Giglio material). If the government chooses to apply for a protective order to postpone the produc-

tion of any particular *Giglio* documents, it shall apply no later than one week before trial.

Because we anticipate the government's proposed 404(b) evidence, and defendant's objections thereto, to be extensive, we order the government to identify this evidence three weeks before trial.[9] *See* Fed. R.Evid. 404(b) (government shall provide the defendant with "reasonable notice" of bad acts evidence); *United States v. Reddy*, 190 F.Supp.2d 558, 576 (S.D.N.Y.2002) (what constitutes "reasonable notice" depends upon the circumstances of each case); *United States v. Livoti*, 8 F.Supp.2d 246, 250 (S.D.N.Y.1998) (notice is generally provided no more than two to three weeks before trial). Any motion to exclude evidence that the government proposes to introduce under Rule 404(b) is to be made two weeks in advance of trial and the government's reply, if any, is due four days thereafter.

In light of the complexity of the charges and the extended period of time covered, the government's witness list is due one week before trial, and any applications for a protective order to withhold the early identification of any witness shall be made ten days before trial and shall inform defendant of the number of such witnesses. *United States v. Cannone*, 528 F.2d 296, 299 (2d Cir.1975) ("The general discretion of district courts to compel the govern-

---

5. Exculpatory evidence, as referred to by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

6. Impeachment evidence, as referred to by *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

7. 18 U.S.C. § 3500.

8. We note that this order does not include non-material witness statements. *Id.* at 146 (holding that the Jencks Act prohibits a district court from ordering the pretrial discov-

ery of witness statements that do not meet the level of materiality required by *post Brady /Giglio* case law). However, the government has represented, *see* Opp. at 70, that it intends to produce these materials by the Friday before trial and we assume that it will do so.

9. In the government's opposition brief, the government stated its intention to produce Rule 404(b) evidence two weeks in advance of trial. For the reasons noted, we have decided to modify the government's offer.

ment to identify its witnesses is acknowledged widely," although the source of that discretion is debated); *United States v. Falkowitz,* 214 F.Supp.2d 365, 395 (S.D.N.Y.2002) (ordering prosecution to produce witness list thirty days before trial, in light of size and complexity of the case and non-violent nature of the offense charged); *United States v. Rueb,* No. 00–91, 2001 WL 96177 (S.D.N.Y. Feb.5, 2001) (ordering the same, in light of voluminous documents produced and extended time period covered by charges). Further, the government shall produce a list of trial exhibits on the Wednesday before trial.

As for the government's efforts to produce documents related to the ongoing prosecution of Mr. Madrid in Mexico, the government stated at oral argument that it is sending a representative to Mexico in November to collect documents, that, promptly after, this trip, it will produce all documents obtained that are discoverable under Rule 16, and that it will submit a progress report to the court and defendant within a month. We therefore find that it would be premature to issue any order to produce these documents, and we instead await the government's report, which we will expect no later than January 7, 2004.

### CONCLUSION

For the reasons stated above, defendant's motion for severance is granted, her motion to dismiss certain wire fraud allegations is denied, and her discovery motions are granted in part and denied in part. As previously discussed with counsel, the trial is scheduled to begin on May 3, 2004. Parties are directed to submit requests to charge and voir dire questions by April 19, 2004.

**IT IS SO ORDERED.**