**UNITED STATES of America,**

v.

**Mario Ernesto Villanueva MADRID, Defendant.**

**02 Cr. 416 (VM)**

United States District Court, S.D. New York.

Signed 06/24/2016

Court Golumbic, Assistant United States Attorney, Richard Joseph Sullivan, U.S. Attorney's Office, New York, NY, for United States of America.

David S. Zapp, David S. Zapp, Attorney at Law, Johanna Sanger Zapp, Johanna S. Zapp, Attorney at Law, Richard Bruce Lind, Richard Lind Attorney at Law, Catherine Foti, Robert G. Morvillo, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

On August 2, 2012, defendant Mario Ernesto Villanueva Madrid ("Villanueva") pled guilty to Count One of Superseding Indictment 02 CR 416, which charged him with conspiracy to commit money laundering in violation of 18 U.S.C. Section 1956(h). (Dkt. No. 47.) On June 28, 2013 the Court imposed a sentence of one hundred thirty one (131) months of imprisonment to be followed by three (3) years of supervised release. (See Dkt. Minute Entry for June 28, 2013.) Villanueva filed this motion pro se pursuant to Rule 36 of the Federal Rules of Criminal Procedure

("Rule 36") to correct a clerical error in the judgment. Villanueva further requests that the Court exercise ancillary jurisdiction over claims related to a fee dispute with his attorney, Richard Lind ("Lind"). ("Motion," Dkt. No. 150.) For the reasons discussed below, Villanueva's Motion is GRANTED.

## I. BACKGROUND [1]

While serving as Governor of the Mexican state of Quintana Roo between 1993 and 1999, Villanueva formed an alliance with a major drug cartel through which Villanueva was paid millions of dollars to provide state and federal police protection to the cartel for cocaine shipments. Villanueva was subsequently charged in the United States with: (1) conspiracy to launder the proceeds of illegal activities in violation of 18 U.S.C. Sections 1956(h), 1956(a)(1)(A) (i), and 1956(a)(1)(B) (i) ("Count One"); and (2) conspiracy to commit bank fraud in violation of 18 U.S.C. Section 1344 and wire fraud in violation of 18 U.S.C. Sections 1343 and 1346. ("Counts Two through Seventeen").

On August 2, 2012, Villanueva pled guilty before this Court to Count One pursuant to a plea agreement with the Government ("Plea Agreement"). (See Dkt. Minute Entry for Aug. 2, 2012.) As part of the Plea Agreement, the parties agreed that the sentence applicable to Villanueva's conduct under the United States Sentencing Commission's Federal Sentencing Guidelines ("Guidelines") was 240 months of imprisonment.

On June 28, 2013, the Court found that a sentence of 204 months of imprisonment

---

1. The Court derives much of the factual and procedural summary below from the background section of United States v. Villanueva Madrid, 302 F.Supp.2d 187, 189–90 (S.D.N.Y. 2003), as well as from the transcript of Villanueva's sentencing on June 28, 2013 ("Sentencing Tr.," Dkt. No. 157) and submissions in this matter: Villanueva's Motion (Dkt. No. 150), the Government's May 16, 2016 Letter in Response to Villanueva's Motion (Dkt. No. 154), and Villanueva's Reply to the Government's May 16, 2016 Letter (Dkt. No. 155).

was appropriate. However, because the Court deducted certain time Villanueva had served in Mexico, the Court imposed a sentence of 131 months. In determining Villanueva's sentence and what periods of time to deduct, the Court considered three distinct time periods during which Villanueva was incarcerated prior to sentencing:

1) The first incarceration period ("Period One") comprised approximately 73 months from May 25, 2001 to June 21, 2007. During Period One, Villanueva was incarcerated in the Federal Center of Social Re-Adaption Number One, Altiplano in Almoloya de Juarez, Mexico pursuant to a Mexican criminal sentence. Villanueva was released from Mexican custody on June 21, 2007 but returned to custody in a different Mexican prison on the same day because of the United States' pending extradition request.

2) The second incarceration period ("Period Two") lasted approximately 35 months from June 21, 2007 to May 8, 2010. During Period Two, Villanueva was held in the Reclusorio Preventivo Varonil Norte in Mexico City while awaiting extradition to the United States.

3) The third incarceration period ("Period Three") lasted approximately 38 months from May 8, 2010 to June 28, 2013. Villanueva served this time in a United States facility while his federal proceedings were pending and while he was awaiting sentencing.

2. The disposition of the denial stated in its entirety reads:

> You were sentenced pursuant to U.S.S.G. Section 5G1.3(b)(1), which the court knew you would not get credit for your undischarged sentence in Mexico. Therefore, you and the Court agreed to the sentence of 131

The Court and both parties agreed that Villanueva would not receive credit from the BOP for Period One. Accordingly, the Court reduced the period of time Villanueva would be committed to the custody of the United States Bureau of Prisons ("BOP") by 73 months to reach the term of 131 months. ("Judgment Order," Dkt. No. 146.) The Court and both parties agreed at sentencing that Villanueva would receive credit against the 131 month sentence for Periods Two and Three. To date, though, the BOP has only credited Villanueva's sentence for the time he was incarcerated during Period Three. Villanueva argues that this is the result of a clerical omission in the Judgment Order, dated June 28, 2013, which states:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: Two-hundred-and-four (204) months. However, the seventy-three (73) months that the defendant was imprisoned in the Mexican justice system for similar conduct will be credited towards the defendant and deducted from his sentence. As a result, the defendant will be imprisoned for a total of one-hundred-thirty-one (131) months in the custody of the Bureau of Prisons. (Dkt. No. 146.)

Villanueva has served roughly 36 months since his sentencing. Upon learning that the BOP was not crediting his sentence for his time served during Period Two, Villanueva first attempted to bring his claim by filing an Inmate Request to Staff, ("First Request") which was denied on February 29, 2016.[2] Following this denial, Villanueva

> months, which was reformed from your 240 months the guidelines called for. You have no appeal since you agreed to this in court. Your jail credit is corrected and won't be adjusted. (First Request, Dkt. No. 150, attachment.)

filed a further Request for Administrative Remedy ("Second Request"), which was denied by letter on March 11, 2016. The BOP based its decision on the understanding that "the pre-sentence credit [Villanueva is] requesting was [already] applied to [his] term of imprisonment in Mexico." (Second Request, Dkt. No. 150, attachment.) The letter goes on to state that, pursuant to the BOP's Sentence Computation Manual, in order for Villanueva to receive the pre-sentence credit, the time served must not have been credited against another sentence.[3] Villanueva made a subsequent appeal to the BOP Regional Director, which was denied, and a final appeal to the BOP's General Counsel that is awaiting response.

Villanueva filed the Motion on April 19, 2016. Villanueva requests that the court correct the Judgment Order to reflect that the 73 months the Court deducted from his 204-month sentence only included his time served in Mexico during Period One. Villanueva also requests that the Court clearly state that its decision to reduce his sentence was not based on any time spent incarcerated in Mexico during Period Two. This correction, he argues, would clarify that the BOP should apply credit to his sentence for the time he was incarcerated during Period Two. Villanueva does not request any clarifications regarding Period Three.

The Government opposed Villanueva's Motion. ("Gov't Opp.," Dkt. No. 153.) The Government argues that the Court should deny Villanueva's Motion on the grounds that: (1) the Motion is seeking to alter the BOP's computation of his sentence and challenges to sentence computation must be addressed through the BOP; and (2) only after all levels of agency review and appeal processes are exhausted with no adequate remedy may Villanueva file a habeas petition pursuant to 28 U.S.C. Section 2241 in the Eastern District of Kentucky, where he is incarcerated.

Villanueva replied to the Government's opposition. ("Reply," Dkt. No. 155.) In his Reply, Villanueva additionally requests that the Court exercise ancillary jurisdiction over Villanueva's claim against Lind for return of an alleged retainer fee paid to Lind to represent Villanueva in correcting the clerical error. Villanueva argues that Lind has not provided any legal services or communicated with Villanueva, but has not returned the retainer fee. Villanueva states that he no longer requires Lind's representation and requests that the Court order Lind to show cause why the retainer fee should not be returned.

## II. DISCUSSION

### A. MOTION TO CORRECT CLERICAL ERROR PURSUANT TO RULE 36

#### 1. Clerical Error

Villanueva requests that the Court correct a clerical error in his Judgment Order pursuant to Rule 36, which states:

> After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission. Fed. R. Crim. P. 36.

A clerical error is generally an error of recitation and mechanical in nature. See United States v. Burd, 86 F.3d 285, 288 (2d Cir.1996). In Burd, the Second Circuit denied a motion to correct because "the correction required more than substi-

---

3. The concept of "double credit" is explained in Guidelines Section 5G1.3(b)(1), which expressly prohibits the BOP from applying jail credit to a defendant's sentence for time already served and credited for a separate criminal conviction.

tuting a right number for a wrong number" and "changed the internal structure of the sentence." 86 F.3d at 288. Similarly, in United States v. Werber, the Second Circuit held that Rule 36 allows a district court to correct clerical errors made when transcribing judgments, but found the rule does not authorize a court "to effectuate its unexpressed intentions at the time of sentencing." 51 F.3d 342, 343 (2d Cir.1995). Accordingly, "a district judge, at any time, [may] amend the written judgment so that it conforms with the oral sentence pronounced by the court." Werber, 51 F.3d at 347–48; see United States v. Pagan, 785 F.2d 378, 380 (2d Cir.1986) (finding that when a variance exists between the oral pronouncement of sentence and the judgment order, the oral sentence generally controls). However, it is important to note that Rule 36 does not permit "amendment of the oral sentence itself." See Werber, 51 F.3d at 347. Additionally, the Second Circuit has described Rule 36 as providing only "a limited avenue for correction of a judgment." United States v. Diaz, 522 Fed. Appx. 97, 98 (2d Cir.2013) (quoting United States v. DeMartino, 112 F.3d 75, 79 (2d Cir.1997)). Thus, according to Werber, a clerical error "should appear on the face of the record, leaving little need for adversary proceedings to clarify the issue." 51 F.3d at 347.

The Government contends that Villanueva's Motion is not a request to correct a clerical error because it concerns BOP's computation of his sentence. The Government cites Garcia–Cruz v. United States, in which the court denied a motion to correct a judgment on the basis that the motion did not propose any specific correction to the original judgment order but instead requested double credit for the movant's state and federal sentences. 270 F.Supp.2d 353, 354, 356 (S.D.N.Y.2003).

■ The Court finds that the omission of the precise dates of Villanueva's presentence deductions is a clerical error. Rule 36 expressly allows for correcting errors in a court's order arising from "omissions and oversight," including inserting omitted dates where, as here, the omitted dates cause the judgment to be construed incorrectly. Villanueva has not requested any substantive change in his sentence. Rather, the Motion requests that the omitted dates be corrected to clarify to the BOP that no credit has been applied for Period Two. This request is distinguishable from Garcia-Cruz, in which the defendant sought to substantively alter his sentence. The error that Villanueva seeks to address would not change the length of the sentence pronounced by the Court.

In sentencing Villanueva, the Court reduced his period of commitment to the BOP from 204 months to 131 months to account for the time Villanueva served during Period One. This was because the parties and the Court agreed that the BOP itself could not grant this particular credit pursuant to the Guidelines' Section 5G1.3(b)(1). (See Sentencing Tr., Dkt. No. 157 at 14, ¶ 16-19.) Both parties agreed that the Court would "deduct from [Villanueva's] sentence" the time period between Villanueva "being placed in a Mexican jail up until the extradition request was filed in Mexico," i.e. Period One. (Id. at 13, ¶ 13-16.)

Periods Two and Three, both parties stated at sentencing and the Court confirmed, were eligible for credit by the BOP. During Villanueva's sentencing hearing, defense counsel stated that: "From the moment that the extradition request was made up until today or whenever the judgment comes down, [Villanueva] is going to get credit for that." (Id. at 17, ¶ 3-7.) Villanueva reaffirmed that the three years he was in Mexico "because of the extradi-

tion proceedings ... plus the three years that [he had] been in prison in the United States" would be credited by the BOP. (Id. at 18 ¶ 22-19 ¶ 2.) The Government did not contest that Villanueva would receive credit for Periods Two and Three. Rather, at the sentencing hearing, the Assistant United States Attorney stated:

> Ultimately, since May of 2001 he has been in custody. The Government's position is the first 73 months the BOP would not give him credit for, the first 73 months in Mexico, because he was getting credit for that time on his Mexican conviction. The BOP will not give double credit. So, there is the first 6 years in Mexico. He then stayed in Mexico from June 2007 to June 2010 pending his extradition to the United States, a time in Mexico in which the government believes the BOP will give him credit for time served when they calculate how much time he still ultimately has to serve if he is given any additional jail time. (Id. at 14 ¶ 8-19).

The Court confirmed this understanding by referencing the "period prior to the time that Villanueva would be credited by the [BOP] that he spent in Mexico jail for which the Government says would not be credited." (Id. at 15, ¶ 3-6.) It is clear from the record of the sentencing proceedings that the Court found that Villanueva would be eligible to receive credit for Period Two as well as Period Three.

**2. Exhaustion of Administrative Remedy**

■ The Government argues that Villanueva must await a final appeal decision from the BOP's General Counsel. Generally, petitioners challenging BOP actions are required to exhaust all possible administrative remedies prior to filing motions or habeas petitions with the court. See, e.g., Tisdale v. Menifee, 166 F.Supp.2d 789 (S.D.N.Y.2001). In Rahman v. Wingate, this Court dismissed a habeas petition on the grounds that the defendant had not exhausted administrative remedies and that he could refile his petition if he provided documentation that all other avenues were pursued. 740 F.Supp.2d 430, 432 (S.D.N.Y.2010). The Court noted, however, that the defendant could instead submit "specific facts and documents showing why exhaustion would be futile." Id.

■ It is apparent from the record here that administrative remedies have been and would likely continue to be futile due to apparent confusion on the part of the BOP regarding the periods of Villanueva's incarceration. This confusion is evident in the BOP's responses denying Villanueva's requests on the mistaken basis that the Court, in reducing Villanueva's sentence to 131 months, had already factored in Villanueva's entire incarceration in Mexico (both Periods One and Two) rather than Period One alone, as was agreed upon by the parties and Court at sentencing.[4] The Government does not dispute that the

---

4. For instance, the BOP response to Villanueva's First Request states that, pursuant to Guidelines Section 5G1.3(b)(1), "the court knew [Villanueva] would not get credit for [his] undischarged sentence in Mexico" and therefore Villanueva agreed to a sentence of 131 months with no further jail credit to be applied for time served in Mexico during Period Two. This determination directly contradicts the statements made by the Defendant, defense counsel, Government counsel, and the Court itself at sentencing. The BOP official also mistakenly stated that the 131 months "was reformed from [the] 240 months the guidelines called for," but the sentence was actually reduced from 204 months. First Request, Dkt. No. 150, attachment.) The denial of Villanueva's Second Request included the same mistaken statement that the 131 months was reformed from 240 months, indicating a degree of confusion within the BOP as to Villanueva's sentence.

BOP's understanding of the credited time periods is mistaken.[5]

The BOP's responses to Villanueva's requests clearly reflect a fundamental misunderstanding of the sentence ordered by the Court and acknowledged by both parties at sentencing. The Court is persuaded that correcting the Judgment Order to make it explicitly clear that the 73 months deducted from the original 204-month sentence only included his time served in Mexico during Period One—and not the time awaiting extradition during Period Two—is appropriate here. This correction will allow the BOP to evaluate Villanueva's administrative appeal with the benefit of a fully accurate picture of the sentence handed down by the Court. Accordingly, Villanueva's Motion to correct clerical error pursuant to Rule 36 is GRANTED.

## B. ANCILLARY JURISDICTION OVER FEE DISPUTE

■ Villanueva requests that the Court exercise ancillary jurisdiction over a retainer fee dispute with Lind. The Supreme Court has instructed that federal courts may exercise ancillary jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition of claims that are, in varying respects and degrees, factually interdependent by a single court, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Garcia v. Teitler, 443 F.3d 202, 208 (2d Cir.2006) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 379–80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) (internal citations omitted)). Federal courts may also specifically exercise ancillary jurisdiction "to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action." Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991) (quoting Cluett, Peabody & Co. v. CPC Acquisition Co., 863 F.2d 251, 256 (2d Cir.1988)).

The Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments." Peacock v. Thomas, 516 U.S. 349, 356, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). In Peacock, the court found that there must be sufficient factual dependence between the claims raised to "justify the extension of ancillary jurisdiction." 516 U.S. at 355–56, 116 S.Ct. 862; see Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 376, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Accordingly, factual allegations made by Villanueva must be dependent, and not independent of, those asserted in the Motion.

■ Here, Villanueva has raised a claim that Lind failed to perform services

**5.** The Government's primary argument is that this matter in its entirety should be left to the BOP. The Court notes that in May 2016 the Office of the Inspector General in the United States Department of Justice published a Review of the Federal Bureau of Prisons' Untimely Releases of Inmates ("DOJ Review") finding that from 2009 to 2014 "incorrect jail credit calculation by [] staff caused . . . 59 of 157 untimely releases . . . making it·by far the most frequent staff error-related cause of untimely releases." DOJ Review at 14. While the DOJ Review agrees that the BOP should be a "central participant" in reviewing sentence computations, it notes that reviews should "include the many entities within and outside the [BOP] that have roles in writing, interpreting, and executing judicial orders and other sentencing documents." Id. at 8. The DOJ Review goes on to recommend that the BOP should "identify and invite participation from additional non-BOP officials . . . whose actions could help to ensure timely releases, including U.S. District Court Judges, federal Public Defenders, and U.S. Probation Office staff." Id. at 35 (emphasis added).

for which he was retained, specifically to aid Villanueva in correcting his judgment and clarifying his sentence to the BOP. Although Villanueva contends that he paid Lind $30,000 for these specific purposes, Lind did not assist in writing or advising Villanueva on the Motion that was ultimately filed to this Court by Villanueva on a pro se basis. However, the motion that Lind was allegedly retained to research, write, and file is still before this Court and thus any dispute about attorney fees directly relates to the main action. Villanueva seeks to discharge Lind as his attorney and seeks return of the retainer fee to find other legal assistance for the instant Motion.

Lind appeared as counsel for Villanueva in his sentencing and, to the Court's knowledge, has not withdrawn from such representation. Further, the retention of Lind's services relates to a matter that is currently before the Court. This Court has original jurisdiction over the Motion because it pertains to correcting an omission in the Judgment Order issued by this Court. Because further proceedings may be necessary to resolve this matter, judicial efficiency favors keeping all claims related to Villanueva with this Court.

The Court is persuaded that the exercise of ancillary jurisdiction over Villanueva's claim against Lind is appropriate. Accordingly, the Court orders Lind to respond to this Order within ten (10) days addressing Villanueva's allegation that his retainer fee has not been returned and showing cause why the relief requested should not be granted.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendant Mario Ernesto Villanueva Madrid ("Villanueva") (Dkt. No. 150) to correct a clerical error pursuant to Rule 36 of the Federal Rules of Criminal Procedure ("Rule 36") is **GRANTED**; and it is further

**ORDERED** that the Judgment Order (Dkt. No. 146) shall be corrected to read as follows: "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of: Two-hundred-and-four (204) months. However, the seventy-three (73) months that the defendant was imprisoned in the Mexican justice system for the same conduct from May 25, 2001 to June 21, 2007 will be credited towards the defendant and deducted from his sentence. As a result, the defendant will be imprisoned for a total of one-hundred-thirty-one (131) months in the custody of the Bureau of Prisons. This Court did not reduce defendant's sentence based on any time incarcerated in Mexico from June 21, 2007 to May 8, 2010 while defendant was awaiting extradition to the United States."; and it is further

**ORDERED** that Richard Lind is directed to respond within ten (10) days of the date of this Order, by letter not to exceed three (3) pages, to the matter set forth above regarding an attorney retainer fee paid by defendant Villanueva, showing cause why the relief requested should not be granted or further proceedings be scheduled to consider the matter.

**SO ORDERED.**